# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| HAROLD HAYES | : | |
| Plaintiff, | : | |
| | | Case No. 3:09CV00024 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.    INTRODUCTION

Plaintiff Harold Hayes suffers from a lung condition that causes him shortness of breath with coughing, and he has trouble concentrating. (Tr. 88-89). He also suffers from knee and shoulder pain. (Tr. 103). Plaintiff previously sought financial assistance from the Social Security Administration by filing at least five unsuccessful applications for Disability Insurance Benefits (DIB) between 1988 and 1996. (Tr. 19, 85).

On May 13, 2004, Plaintiff filed an application for Supplemental Security Income (SSI), and on June 1, 2004, he filed his current DIB application. In both applications he asserted that beginning on December 31, 2001, he has been under a disability. (Tr. 5, 70-74).

After initial denials of his applications followed by an administrative hearing (Tr. 580-609), Administrative Law Judge (ALJ) Melvin A. Padilla issued a partially favorable decision finding that Plaintiff was under a disability beginning on December 18, 2007 and

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

was therefore eligible for SSI beginning on that date. (Tr. 31). Because ALJ Padilla found that Plaintiff was not under a disability before December 18, 2007, he was not entitled to DIB or SSI before that date. (Tr. 31-32). The ALJ's non-disability determination from December 31, 2001 through December 18, 2007 and the resulting denial of benefits later became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C.§ 405(g), which Plaintiff now is due.

This case is before the Court upon Plaintiff's Statement of Specific Errors (Doc. 8), the Commissioner's Memorandum in Opposition (Doc. 10), the administrative record, and the record as a whole.

Plaintiff seeks an order reversing the ALJ's decision and granting Plaintiff benefits, or, at a minimum, a remand of this case to the Social Security Administration to correct certain alleged errors. The Commissioner seeks an Order affirming the ALJ's decision.

## II.     BACKGROUND

### A.     <u>**Plaintiff and His Testimony**</u>

At the time of the alleged disability onset date, Plaintiff's age (49) placed him in the category of "younger individual." *See* 20 C.F.R. §§404.1563(c); 416.963(c).[2] Plaintiff turned age 50 on December 19, 2002, placing him in the category of a person "closely approaching advanced age" for purposes of resolving his SSI and DIB applications. *See* 20 C.F.R. § 416.963(d). And on December 19, 2007, Plaintiff reached age 55, which placed him into the category of person of "advanced age" for social security purposes. *See* 20 C.F.R. § 416.963(e), *see also* Tr. 29-30.

Plaintiff's educational level is reflected in his high school education. *See* 20

---

[2] The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI Regulations.

C.F.R. §416.964(b)(4); *see also* Tr. 93. His past employment involved work as an iron worker, general laborer, machine operator, plumber, and roofer. (Tr. 89).

During the ALJ's hearing, Plaintiff testified that he weighed 450 pounds. (Tr. 583). He has throbbing pain and swelling in both knees almost all the time, especially early in the morning. (Tr. 587). He takes pain medication which makes him drowsy. (Tr. 588-90). Plaintiff testified that he has experienced gradually worsening breathing problems for five or six years. (Tr. 591). He testified that he continues to use oxygen as well as inhalers for his breathing problems. *Id.*

Plaintiff has a torn rotator cuff on his right shoulder. Plaintiff explained that his doctors recommended surgery but because of his obesity, they were afraid to "put him under." (Tr. 592). He did not complete physical therapy for his shoulder injury because he got sick. *Id.*

Plaintiff estimated that he could not walk for more than 5 minutes or stand more then 10 minutes at a time. (Tr. 593). He is most comfortable sitting. (Tr. 594). He estimated he could lift 15 pounds. *Id.* He cannot tie his shoes. (Tr. 595).

As to his daily activities, Plaintiff testified that before he moved into the nursing home, he could wash his own dishes and could sweep or mop, but he did not vacuum, do his own laundry, or make his bed. (Tr. 595-96). He gets dizzy and short of breath when he climbs stairs. (Tr. 595). He has trouble reaching with his right hand. (Tr. 601). Plaintiff testified that he stopped smoking four months before the ALJ's hearing. (Tr. 598, 601).

### B.   Medical Records

Plaintiff received medical treatment at the Cassano Health Center from March 2004 through October 2004. (Tr. 185-206). A chest x-ray from April 2004 showed that Plaintiff had interstitial lung disease. (Tr. 200). In May 2004, Plaintiff underwent a pulmonary function test, which was normal and showed that Plaintiff had normal air flow throughout his large airways. (Tr. 150-52). A chest CT from May 2004 was negative for

3

abnormalities. (Tr. 153). An x-ray of the right knee in July 2004 showed moderate degenerative joint disease. (Tr. 193). A cervical spine x-ray taken the same day showed degenerative changes of the cervical spine with facet arthropathy and minimal C4-5 degenerative retrolisthesis. *Id.*

In July 2004 Kelly M. VanFossen, D.O., one of Plaintiff's treating physicians, completed a form. (Tr. 154-56). Dr. VanFossen noted, in part, that Plaintiff had osteoarthritis and bipolar disorder. (Tr. 155). Dr. VanFossen opined that Plaintiff could stand/walk for 1 hour in an 8-hour workday and could sit for more 2 hours in an 8-hour workday. (Tr. 156). Dr. VanFossen believed that Plaintiff could occasionally lift 10 pounds. *Id.* Dr. VanFossen also believed that Plaintiff was markedly limited in his ability to push/pull, bend, reach, and handle. *Id.* And Dr. VanFossen explained that (1) Plaintiff walks with a cane; (2) x-rays indicated degenerative joint disease in his knees; and (3) he has weak upper extremities with x-ray demonstrating degenerative joint disease in his neck. *Id.*

In September 2004 Plaintiff saw Aivars Vitols, D.O. for a consultative physical examination at the request of the Ohio Bureau of Disability Determination. (Ohio BDD). (Tr. 176-84). Plaintiff reported a history of shortness of breath, but he denied anterior chest pain. According to Dr. Vitols, "He basically describes exertional type of dyspnea." (Tr. 176). Plaintiff came using a cane, but Dr. Vitols stated that use of the cane was "non-obligatory." (Tr. 177). Plaintiff was morbidly obese at 350 pounds. Dr. Vitols noted, "He tops out on the scales." *Id.* Upon examination, Dr. Vitols observed that Plaintiff's lungs were clear to auscultation, percussion tones were normal, and his chest exertion was normal with no evidence of accessory muscle usage. (Tr. 178). Dr. Vitols noted that Plaintiff's breathing was unlabored. *Id.* Plaintiff had bilateral knee tenderness over the medical joint line but Dr. Vitols was unable to assess the degree of effusion due to morbid obesity. Flexion was limited by morbid obesity. (Tr. 179). Plaintiff's left shoulder showed relative weakness and pain. Shoulder abductors, external rotators and internal

4

rotators were only 4/5 on the left. (Tr. 181). Dr. Vitols assessed that Plaintiff had chronic left shoulder strain, bilateral knee pain of undetermined etiology, morbid obesity, chronic low back pain and hypertension per history. Dr. Vitols concluded, "The claimant has some relative loss of motion and strength in the left shoulder as documented. Some restricted motion is evident in the back. Both knees are tender at the medial compartment to palpation." (Tr. 180).

In October 2004 Jon Starr, M.D., reviewed the record for the Ohio BDD. He checked boxes indicating that Plaintiff could occasionally lift and carry up to 20 pounds; frequently lift and carry up to 10 pounds; and stand, sit, and walk about 6 hours in an 8-hour workday. Dr. Starr explained:

> clmt is morbidly obese at 6'3" and over 350 pounds. he has back and knee pain with decreased ROM [range of motion] and pain. no instability or neurological deficits. left shoulder is sore and also had decreased ROM COPD [chronic obstructive pulmonary disease] is stable, no repeated Ers and PFS WNL. clmt has severe pain with extended standing and walking, and obesity complicates this. History of remote knee injury in the 1990s and alleges difficulties as noted, however 4/04 the patient had exercise stress testing in which he walked ›550 feet in less than 4 minutes, averaging ›2.5 feet/second.

(Tr. 208).

Dr. Starr concluded that Plaintiff should never climb ladders and should only occasionally balance, kneel, or crawl. (Tr. 209). In March 2005 Maria P. Congbalay, M.D., stamped her agreement with Dr. Starr's opinions without providing any supporting explanation. (Tr. 214).

A June 2005 MRI of Plaintiff's cervical spine showed "multilevel degenerative disc and some facet disease with varying levels of neural compromise including significant multilevel foraminal stenosis." (Tr. 227).

Plaintiff was seen at Miami Valley Hospital multiple times from September 2005 to March 2006 due to complaints of coughing and shortness of breath. (Tr. 228-43, 253-56, 262-77, 304-08, 309–12). In September 2005 the attending physician noted that

5

Plaintiff likely had COPD exacerbation secondary to bronchitis and probable obstructive sleep apnea. (Tr. 228). The physician noted that Plaintiff had "likely COPD, although not officially diagnosed." *Id*. According to the physician, Plaintiff qualified for use of oxygen at home based on the nighttime study but did not qualify for oxygen use during the day or while resting. *Id.*

In December 2005 Plaintiff was advised to stop smoking and to continue using an inhaler. (Tr. 254).

An MRI taken of Plaintiff's right shoulder in October 2005 showed a full thickness rotator cuff tear; an anterior impingement of the acromioclavicular joint; reactive synovitis and bursitis; and degenerative changes to the labrum, probably due to repetitive microtrauma. (Tr. 249).

In January 2006 Plaintiff underwent a pulmonary function test, which showed normal spirometry, although there was no measure of Plaintiff's oxygen saturation. (Tr. 303). Plaintiff weighed 387 pounds. *Id.*

## III. ADMINISTRATIVE REVIEW

### A. "Disability" Defined

The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986). A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

### B.     The ALJ's Decision

The ALJ resolved Plaintiff's disability claim by using the five-Step sequential evaluation required by the Regulations. *See* Tr. 20-21; *see also* 20 C.F.R. §404.1520(a)(4).

The ALJ concluded at Step 2 that Plaintiff had severe impairments of "1) obesity; 2) a history of alcohol and marijuana abuse in apparent institutional early remission; 3) possible right shoulder rotator cuff tear since October 2005; 4) breathing problems secondary to obesity but with normal pulmonary function on testing; 5) right knee degenerative arthritis; 6) cervical spine disc disease; and 7) chronic lumbar strain." (Tr. 23-24).

The ALJ determined at Step 3 that Plaintiff does not have an impairment or combination of impairments that meet or equal the level of severity described in Appendix 1, Subpart P, Regulations No. 4. (Tr. 27).

At Step 4 the ALJ concluded that Plaintiff has residual functional capacity to perform a limited range of light work[3] "featuring: 1) alternating positions; 2) inside work in a temperature-controlled, clean-air environment; 3) no climbing of ladders or scaffolds; 4) no work at unprotected heights; 5) occasional climbing of stairs; 6) no kneeling or crawling; 7) frequent stooping and crouching; and 8) occasional reaching and lifting with the right upper extremity." *Id.* The ALJ further found at Step 4 that Plaintiff was unable to perform his past relevant work.

Considering Plaintiff's age, education, work experience, and residual functional capacity at Step 5, the ALJ determined that Plaintiff could perform jobs existing in significant numbers through December 17, 2007. (Tr. 30). The ALJ further concluded that beginning the next day, Plaintiff was under a disability pursuant to the medical-vocational guidelines. (Tr. 30).

---

[3]The Regulations define light work as involving the ability to lift " no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §416.967(b)

Thus, the ALJ ultimately concluded that Plaitniff was eligible for SSI beginning on December 18, 2007 but not before. The ALJ further concluded that Plaintiff was not eligible for DIB because his insured status expired on June 30, 2007, before his disability onset date. (Tr. 30-31).

### IV.  JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: whether substantial evidence in the administrative record supports the ALJ's factual findings and whether the ALJ "applied the correct legal criteria." *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

"Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "'more than a scintilla of evidence but less than a preponderance..." *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review of the administrative record and the ALJ's decision is not *de novo*. *See Cutlip v. Secretary of Health and Human Servs.*, 25 F3d 284, 286 (6th Cir. 1994). And the required analysis is not driven by whether the Court agrees or disagrees with an ALJ's factual findings or by whether the administrative record contains evidence contrary to those findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld "as long as they are supported by substantial evidence." *Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90).

The second line of judicial inquiry – reviewing the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *See Bowen*, 478 F3d at 746. This occurs, for example, when the ALJ has failed to follow the Commissioner's "own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d

8

at 746 (citing in part *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir.2004)).

## V. DISCUSSION

### A.

Plaintiff contends that since September 2005 he has been unable to perform light work exertionally because he has required oxygen when he is not at rest. Plaintiff contends that the ALJ erred by concluding that there was "no medical basis for concluding that he must carry an oxygen tank around with him or that he would require O2 while just standing or sitting." (Tr.29). Plaintiff maintains that this finding conflicts with the treating physicians who thought he needed oxygen when he was not at rest from September 2005 forward. (Doc. #8 at 10). Plaintiff emphasizes that there are no contrary medical opinions and that the reviewing physicians' opinions in 2005 and early 2005 "do not belie the need for oxygen." *Id*. Plaintiff concludes that a reversal of the ALJ's decision is warranted along with a remand for payment of benefits because he needs to use oxygen when he is not at rest, and given the vocational expert's testimony that such a person could not perform light work, Rule 201.14 of the medical-vocational guidelines requires a disability finding.

Each of these arguments fails because the record does not support Plaintiff's asserted need for oxygen when not at rest and because substantial evidence supports the ALJ's decision not to fully credit Plaintiff's asserted need for oxygen when not at rest.

The record shows that in September 2005 Plaintiff went to the emergency room because he had been suffering from cold-like symptoms including shortness of breath, cough, congestion for 4 or 5 days. (Tr. 228, 231). On this occasion, he was not definitely diagnosed with COPD. Instead a physician documented that he had "likely COPD although not officially diagnosed." (Tr. 228). The physician further documented that Plaintiff "qualified for oxygen at home based on the nighttime study, although during the day and while resting he did not qualify." (Tr. 228). Further examination and evaluation two days later, on September 8, 2005, resulted in the diagnosis of "possible chronic

obstructive pulmonary disease...." (Tr. 233). Plaintiff thereafter went to the emergency room in December 2005 with a history of "bronchitis" and a chief complaint of a cough that he could not get rid of. (Tr. 253). In February 2006 Plaintiff went to the emergency room due to shortness of breath and bronchitis. (Tr. 304). He was "placed on a COPD protocol and was given a breathing treatment" with improvement on re-examination. (Tr. 305). In March 2006 he returned to the emergency room complaining difficulty breathing for several days, and upper respiratory symptoms for a week including cough, runny nose, congestion, and tactile fever. (Tr. 262-64).

If these records are viewed in Plaintiff's favor, they show that he may well have been suffering from COPD. But, as the Commissioner correctly points out, on each of these visits, his COPD symptoms were aggravated by his cold/bronchitis symptoms. *See* Tr. 253, 262-64, 304. On each occasion he was treated with oxygen. Up to that point, he had never used any inhalers or taken any medications for any breathing symptoms. (Tr. 228). At most these records document that when Plaintiff experienced upper respiratory problems, those problems aggravated his COPD (or likely COPD). These records do not support Plaintiff's assertion that he needed to use oxygen when not at rest due to COPD alone. Instead, the records of his emergency room visit in September 2005 reveal that Plaintiff reported that before he suffered that attack of cold symptoms and shortness of breath, "he was able to walk at least a mile without shortness of breath." (Tr. 231). Such ability when his cold/bronchitis symptoms were not present support the ALJ's rejection of Plaintiff's asserted need for oxygen when not at rest.

In addition, Plaintiff's two time normal pulmonary function tests (taken in May 2004 and in January 2006) are consistent with this conclusion, as the ALJ recognized. (Tr. 24, 150-52, 303). Significantly, one of these normal pulmonary function tests was administered in January 2006, which was four months after his September 2005 hospitalization. (Tr. 303). As a result of these results, the attending physician advised Plaintiff to wear two liters of oxygen at bedtime and wear a couple of liters with exertion

as needed. (Tr. 229). However, Plaintiff, himself, advised a nurse at a subsequent hospital visit that he "is on oxygen as needed at night." (Tr. 253). The rest of the record suggests that as Plaintiff had advised a nurse, he only used two liters of oxygen at night. Specifically, records from the St. Vincent's Homeless Shelter from July through October 2006 show that Plaintiff was using two liters of oxygen per day via nasal cannula. *See* Tr. 377-78, 392, 378, 392-93, 394-98, 400-02. Plaintiff's use of oxygen at night does not automatically mean he needed to use it during the day, and it bears repeating, the record shows that Plaintiff needed oxygen only at night unless he was ill with cold/respiratory symptoms and the record establishes that in September 2005 Plaintiff acknowledged to a physician that when he was not suffering such symptoms, he could walk "at least a mile" with no shortness of breath. (Tr. 231). Thus, the aforementioned evidence supports the ALJ's conclusion that Plaintiff's breathing condition did not require any more restrictions than a temperature-controlled, clean-air work environment. *See* Tr. 27.

Plaintiff argues that the reviewing physicians' opinions do not belie his asserted need for oxygen. Yet, Dr. Starr (and Dr. Congbalay) did not specifically state that Plaintiff needed to use oxygen when not at rest and seemed to believe otherwise. For example, Dr. Starr believed that Plaintiff could occasionally lift 20 pounds and could stand and/or walk for 6 hours out of an 8-hour workday. Dr. Starr did not state in his explanation that Plaintiff was required to use oxygen during exertional activities. *See* Tr. 208.

Plaintiff further asserts that the ALJ essentially substituted his own lay opinion in place of the treating physicians who prescribed oxygen for Plaintiff. Such a substitution would constitute error. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); *see also Meece v. Barnhart*, 2006 WL 2271336, *8 (6th Cir. 2006). But the ALJ did not err in this manner. As noted above, the records supporting Plaintiff's need for supplemental oxygen during exertion arose when his COPD was aggravated by additional upper respiratory functions. And, the ALJ relied on Plaintiff's normal pulmonary function studies in May

11

2004 and January 2005, *see* Tr. 24-25, as well as relying on Dr. Starr's assessment of Plaintiff's exertional abilities, which were not limited by the required use of supplemental oxygen. *See* Tr. Tr. 28, 208.

Accordingly, Plaintiff's first set of challenges to the ALJ's decision lacks merit.

**B.**

Plaintiff contends that the ALJ failed to consider the effects of his obesity in combination with his breathing and orthopedic problems when evaluating his experience of pain and other symptoms.

Plaintiff correctly states (and the Commissioner does not dispute) that there is no question he is morbidly obese. He is 6'3" tall. In September 2004 he topped out the scale at 350 pounds. (Tr. 177). In January 2006 he weighed 387 pounds. (Tr. 303). Later that year, in July 2006, he weighed more than 400 pounds. (Tr. 364). And during the ALJ's hearing, Plaintiff stated that he weighed 450 pounds. (Tr. 583).

Although the Commissioner's Listing of Impairments once included obesity itself as an impairment under a separate Listing section (9.09), the Commissioner deleted this separate Listing, effective October 25, 1999. *Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643-44 (6th Cir. 2006)(en banc). "The Commissioner explained this decision by noting that the criteria in listing 9.09 'were not appropriate indicators of listing-level severity because they did not represent a degree of functional limitation that would prevent an individual from engaging in any substantial gainful activity.'" *Combs*, 459 F.3d at 644 (quoting 64 Fed. Reg. 64122, 46124 (Aug. 24, 1999)). Yet the Commissioner did not wholly exclude obesity from consideration at Step 3; instead the Commissioner "explained that obese claimants can still prevail at step three by proving that their obesity combined with other ailments equals the severity of a different listed impairment. Indeed, the Commissioner simultaneously amended the introductory text to musculoskeletal, respiratory, and cardiovascular systems listings to give guidance regarding obesity's potential to combine with other impairments at step three." *Combs*, 459 F.3d at 644

12

(citing 64 Fed. Reg at 46123, 46128-29).

In 2002 the Commissioner issued a new obesity ruling explaining that obesity will be considered at Step 2, 3, and 4 of the sequential evaluation. *See* Soc. Sec. Ruling 02-1p, 67 Fed. Reg. 57859-02, 2002 WL 31026506 (Sept. 12, 2002). When explaining how obesity will be considered at Step 4, this Ruling states, in part:

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. And individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balanc[ing], stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.
>
> * * *
>
> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time.

Ruling 02-1p, 67 Fed. Reg. at 57862-63.

Plaintiff contends that the ALJ provided no such assessment and instead "seemed to dismiss the severity of problems exacerbated by obesity. For example, the [ALJ] noted Mr. Hayes used oxygen, but noted, 'this is likely due mostly to his obesity.'" (Doc. #8 at 12)(quoting, in part, Tr. 28).

In contrast to Plaintiff's arguments, the ALJ's decision reveals that he considered Plaintiff's obesity in combination with his other impairments. The ALJ acknowledged Plaintiff's testimony during the hearing that he weighed 450 pounds and he found obesity to be one of Plaintiff's severe impairments at Step 2. The ALJ found at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria of an impairment in the Listings. (Tr. 27). The ALJ also found that Plaintiff's "orthopedic problems, as aggravated by his morbid obesity, reasonably would be

expected to diminish his capacity for strenuous exertion and also result in some postural movement limitations. His chronic breathing problems are somewhat difficult to characterize and probably cannot be attributed to COPD as pulmonary function studies have been negative (Exhibits 4F and 27F). It is more likely that his breathing problems are largely due to his morbid obesity, although he has also exhibited some signs of mild congestive heart failure or central venous congestion (Exhibits 23F and 34F). In any case, some environmental restrictions would be required due to his respiratory difficulties." (Tr. 25). This assessment of the record by the ALJ amply demonstrates that he considered Plaintiff's morbid obesity in combination with his other impairments when assessing his functional abilities. In addition, the ALJ further restricted Plaintiff's postural activities by limiting him to work that would allow him to alternate positions for his comfort and to relieve any buildup of discomfort, and also limiting him to occasional stair climbing and no ladder or scaffold climbing. (Tr. 27-28). And at Step 4 the ALJ relied on the opinions of Dr. Starr, who considered Plaintiff's morbid obesity when assessing his exertional limitations, *see* Tr. 28, and Dr. Vitols, who similarly considered Plaitniff's morbid obesity when assessing Plaintiff's exertional limitations. *See* Tr. 177-80, 182-84. For these reasons, the ALJ adequately assessed the impact Plaintiff's obesity combined with his other impairments had on his work abilities and limitations.

Plaintiff contends that the ALJ erred by relying on Plaintiff's former daily activities, even though there was no testimony regarding how often he did such activities. This contention fails to show reversible error in this case. The Regulations permitted the ALJ to consider Plaintiff's daily activities when assessing his credibility. *See* 20 C.F.R.§404.1529(c)(I). Substantial evidence, including Plaintiff's own testimony, supported the ALJ's consideration of his daily activities. For example, Plaintiff testified that before he entered a residential facility, he could lift 15 pounds comfortably, had no limitation on his ability to sit, and could cook, sweep, mop, and sometimes shopped for groceries. (Tr. 593-96). He attended church 4 to 5 times per week, and he visited family

and friends. (Tr. 596). It would certainly have been better for the ALJ to question Plaintiff more fully on the frequency and extent of these activities, the ALJ's decision contains a discussion of additional factors applicable to assessing Plaintiff's credibility. The ALJ did so by observing that Plaintiff's impairments were managed conservatively, that nursing home records show he met his goals for physical and occupational therapy; and the lack of corroborating medical records confirming his testimony about the side effects of his medications. *See* Tr. 29; *see also* 20 C.F.R. §404.1529(c).

Accordingly, Plaintiff's second set of challenges to the ALJ's decision lacks merit.

## C.

Plaintiff lastly argues that a finding of disability is warranted beginning at least on June 30, 2007. Plaintiff contends that when finding that Plaintiff's disability did not begin until December 2007, the ALJ erred by mechanically applying the Grids. Plaintiff thus concludes that this constituted error due to his "borderline situation."

In support of these contentions, Plaintiff points to cases finding a borderline situation "to fall somewhere around six months of the next age category, based on an Appeals Council interpretation issued in March 1979." (Doc. #8 at 14). However, the Commissioner correctly points out that the Regulations now explain, "If you are within a few days to a few months of reaching an older age category, and using the older category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case." 20 C.F.R. §404.1563(b). Plaintiff's date last insured for DIB purposes, June 30, 2007, was not just a few days to a few months away from reaching an older age category in December 2007, it was just under six months from the date he reached the next older age category. Consequently, the Regulations did not require the ALJ to consider Plaintiff to be in the next age category beginning on June 30, 2007. *See id.*

15

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's final non-disability decision be affirmed; and

2. The case be terminated on the docket of this Court.


December 10, 2009                                s/Sharon L. Ovington
                                                 Sharon L. Ovington
                                                 United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6${}^{th}$ Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).